IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 08–cv–00262–CMA–KMT

JOHN NASIOUS,

Plaintiff,

v.

SHERIFF T. GRAYSON ROBINSON - Arapahoe County Detention Facility,
in his official and individual capacity, and
EDDIE CLIMER - Aramark Correctional Services,
in his official and individual capacity,

Defendants.

---

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**

---

**Kathleen M. Tafoya**
**United States Magistrate Judge**

This case involves claims that Defendant Sheriff J. Grayson Robinson (hereinafter "Robinson")[1] violated Plaintiff's rights under the First and Eighth Amendments, as well as the Religious Land Use and Institutionalized Persons Act (hereinafter "RLUIPA"), 42 U.S.C. § 2000cc *et seq*. This case comes before the court on "Defendant J. Grayson Robinson's Motion for Summary Judgment." ([Doc. No. 75] [filed September 10, 2009] [hereinafter "Mot."].)

---

[1] Plaintiff also filed suit against Defendant Eddie Climer. On May 4, 2009, Defendant Climer moved to dismiss the claims against him arguing Plaintiff had failed to allege action under color of law. (Doc. No. 55.) On December 9, 2009, this court issued its Recommendation that Climer's Motion be denied on that basis. (Doc. No. 88.) This Recommendation is currently pending before the court.

Plaintiff filed his Response on September 24, 2009. ([Doc. No. 78] [hereinafter "Resp."].) Defendant filed his Reply on October 9, 2009. ([Doc. No. 79] [hereinafter "Reply"].) Jurisdiction is premised upon 42 U.S.C. § 1983 (2008). This motion is ripe for review and recommendation.

**STATEMENT OF THE CASE**

The following facts are taken from Plaintiff's Amended Prisoner Complaint ([Doc. No. 11] [filed April 1, 2008] [hereinafter "Compl."]) and the parties' submissions with respect to this Recommendation. Plaintiff is an inmate currently incarcerated at the Sterling Correctional Facility, a Colorado Department of Corrections facility located in Sterling, Colorado. (Compl. at 2.) At the time relevant to this litigation, Plaintiff was incarcerated at the Arapahoe County Detention Facility (hereinafter "ACDF"). (*Id.* at 4.) Plaintiff was incarcerated at ACDF on two separate occasions. First, from November 30, 2005 to March 13, 2006, and subsequently, from June 17, 2006 to September 28, 2006. (Mot., Ex. A-1, Aff. of Sherri Hanak [hereinafter "Hanak Aff."], ¶¶ 3–4.) During this time, according to Plaintiff, Defendant Robinson served as Sheriff and was "legally responsible for the operation of the [ACDF] and the welfare of the inmates within the institution." (*Id.* at 2.)

Plaintiff states he subscribes to the Jewish faith, according to which he is required to maintain a Kosher diet. (*Id*. at 4.) In Claims One and Two, Plaintiff alleges the "[ACDF] fail[ed] to prepare a kosher diet" for him. (*Id*. at 3.) Plaintiff alleges that throughout his two terms of incarceration at ACDF, "Defendants . . . forc[ed] the plaintiff to eat Muslim Halal meals," (*id*.), and meals prepared using non-Kosher kitchen utensils, in violation of Jewish

dietary laws (*id*. at 5). Also in Claims One and Two, Plaintiff alleges ACDF "continually denied [Plaintiff] and the other Jewish inmates disposable [eating] untensils [sic]," in violation of Jewish dietary laws. (*Id*. at 4.) Plaintiff alleges he submitted grievances detailing these complaints regarding non-Kosher meals and eating utensils to Defendant Robinson but that none were answered and no action was taken to address his issues. (*Id*. at 5–6.) Plaintiff alleges Defendant Robinson "failed to follow the dietary laws of Kashruth of the Jewish Religion[] and refused to correct the patterns of the malfaesence [sic]," in violation of his First Amendment right to free exercise of religion, and his rights under the RLUIPA. (*Id*. at 4.)

In Claim Three, Plaintiff alleges the Kosher meals served at ACDF throughout his incarceration "failed to meet . . . the recommended dietary allowances of the National Academy of Sciences," and "were almost always served [with] spoiled rotten fruit, vegetables, and food exposed to cross-contamination."[2] (*Id*. at 5–6.) Plaintiff alleges he and other Jewish inmates "were unable[,] due to their confinement[,] [to] seek an alternative source of nutrition." (*Id*. at 4.) Plaintiff alleges Defendant Robinson "failed to properly prepare and serve a nutritionally Kosher diet to [Plaintiff] and other Jewish inmates," in violation of his Eighth and Fourteenth Amendment rights. (*Id*.)

Plaintiff seeks declaratory and injunctive relief, as well as compensatory and punitive damages. (*Id*. at 23.) Defendant Robinson seeks summary judgment on all Plaintiff's claims arguing there is no genuine issue as to any material fact and he is entitled to judgment as a matter

---

[2] Plaintiff has failed to explain what exactly is meant by "cross-contamination."

of law because: 1) Plaintiff has failed to allege Defendant Robinson's personal participation; 2) Plaintiff's claims are barred by the statute of limitations; and 3) all the relief requested by Plaintiff is unavailable. (Mot.)

## STANDARD OF REVIEW

### *1.* **Pro Se *Plaintiff***

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### ***2. Fed. R. Civ. P. 56(c) – Summary Judgment***

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248).

The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## ANALYSIS

### *I. RLUIPA*

Plaintiff alleges the denial of Kosher meals and disposable utensils violated his rights under RLUIPA. RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government demonstrates that the burden is "in furtherance of a compelling governmental interest" and is "the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc-1(a).

As a preliminary matter, the court notes "RLUIPA does not authorize suits against individual defendants," nor does the statute permit a claim for damages. *Boles v. Neet*, 402 F. Supp.2d 1237, 1240–41 (D. Colo. 2005). "Appropriate relief" under RLUIPA is limited to injunctive or declaratory relief. *Id.* at 1241. Accordingly, Plaintiff's RLUIPA claims for compensatory damages and those brought against Defendant Robinson in his individual capacity are properly dismissed with prejudice.

Further, there is no dispute that Plaintiff is no longer incarcerated at ACDF. (Compl. at 2.) "Article III's requirement that federal courts adjudicate only cases and controversies necessitates that courts decline to exercise jurisdiction where the award of any requested relief would be moot, i.e. where the controversy is no longer live and ongoing." *Green v. Branson*, 108 F.3d 1296, 1299 (10th Cir. 1997) (internal quotations omitted). "[W]hat makes a declaratory judgment action a proper judicial resolution of a 'case or controversy' rather than an advisory opinion is the settling of some dispute which affects the behavior of the defendant

toward the plaintiff." *Id.* "[A] plaintiff cannot maintain a declaratory or injunctive action unless he or she can demonstrate a good chance of being likewise injured by the defendant in the future." *Id.* When a prisoner has been released from custody, a declaratory judgment and injunctive relief in his favor would amount to nothing more than declaration that he was wronged, and would have no effect on defendants' behavior towards him. *Id.* at 1300. A prisoner's claims for declaratory and injunctive relief against prison officials become moot where the prisoner has been released from incarceration. *Id.*

Plaintiff was released from ACDF on September 28, 2006 (Mot., Ex. A-1, ¶ 4), and is presently incarcerated at the Sterling Correctional Facility. (Compl. at 2.) Since Plaintiff is no longer within the control of ACDF, he cannot demonstrate further injury by Defendant Robinson and, therefore, cannot maintain an action for declaratory or injunctive relief pursuant to RLUIPA. Plaintiff's RLUIPA claims against Defendant Robinson are properly dismissed as moot.

***II. Statute of Limitations***

Defendant contends Plaintiff's claims are barred by the statute of limitations. (Mot. at 15.) Although Section 1983 does not, itself, contain a statute of limitations, *see Blake v. Dickason*, 997 F.2d 749, 750–51 (10th Cir. 1993), "the applicable statute of limitations in Section 1983 actions is generally the residual statute of limitations for personal injury actions in the forum state." *Nicholas v. Boyd*, 317 F. App'x 773, 777 (10th Cir. 2009) (citing *Owens v. Okure*, 488 U.S. 235, 249–50 (1989)). "In Colorado, the applicable statute of limitations is two years." *Id.* (citing Colo. Rev. Stat. § 13-80-102; *Blake*, 997 F.2d at 750–51); *see* Colo. Rev. Stat.

§ 13-80-102(1)(g) (establishing a two-year limitation period for "[a]ll actions upon liability created by a federal statute where no period of limitation is provided in said federal statute"); Colo. Rev. Stat. § 13-80-102(1)(i) (establishing a two-year limitation period for "[a]ll other actions of every kind for which no other period of limitation is provided").

Although Colorado law supplies the applicable statute of limitations, federal law governs the accrual of a federal cause of action. *Nicholas*, 317 F. App'x at 778 (citing *Smith v. Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998)). Section 1983 claims accrue, for the purpose of the statute of limitations, "when the plaintiffs know or should know their rights have been violated." *Id.*, *see also Enid*, 149 F.3d at 1154 ("A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action"). "The test is an objective one, with the focus 'on whether the plaintiff knew of facts that would put a reasonable person on notice that wrongful conduct caused the harm.' " *Id.* (citing *Alexander v. Okla.*, 382 F.3d 1206, 1216 (10th Cir. 2004)).

Since Plaintiff alleges his First and Eighth Amendment rights were violated throughout his incarceration in ACDF, from December of 2005 to September of 2006 (Compl. at 3–5), there is no singular accrual date for any of Plaintiff's claims. However, Plaintiff filed suit on February 2, 2008. (Doc. No. 2.) Therefore, any claims based on events occurring prior to February 2, 2006 are time-barred and will not be considered herein.

### *III. Individual Capacity Claims*

Defendant claims Plaintiff has failed to show Defendant Robinson personally participated in any alleged misconduct. (Mot. at 14–15.) Personal participation is an essential allegation in a

Section 1983 civil rights action. *Bennett v. Passic*, 545 F.2d 1260, 1262–63. To establish personal liability, a plaintiff must show that the official caused the deprivation of a federal right. *Ky. v. Graham*, 473 U.S. 159, 166 (1985). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993).

"Courts should look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 n.2 (10th Cir. 2007). "[T]o state a claim in federal court, a complaint must explain what each defendant did to him or her; when the defendant did it; how the defendant's action harmed him or her, and what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007).

Plaintiff alleges Defendant Robinson failed to adequately train ACDF staff and to enforce the RLUIPA at ACDF. (Compl. at 6.) Plaintiff also alleges Defendant Robinson abused his authority by failing to respond to Plaintiff's grievances and to correct "the problems with the Aramark Correctional Services." (*Id.*) However, the Complaint is devoid of a single specific factual allegation showing Defendant Robinson personally denied Plaintiff Kosher meals, disposable utensils, or served him spoiled or nutritionally inadequate food or that he directed anyone else to do so. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1948

(2009). Since Plaintiff has failed to do so, his First and Eighth Amendment claims against Defendant Robinson in his individual capacity are properly dismissed.

Further, qualified immunity shields government officials sued in their individual capacities from liability for civil damages provided their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). However, "[a] summary judgment decision involving the defense of qualified immunity is reviewed 'somewhat differently' from other summary judgment rulings." *Scull v. N.M.*, 236 F.3d 588, 595 (10th Cir. 2000) (quoting *Romero v. Fay*, 45 F.3d 1472, 1475 (10th Cir. 1995)). According to the Tenth Circuit

> When a defendant raises the issue of qualified immunity, the plaintiff must satisfy a two-part test. First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right. Second, the plaintiff must show that the constitutional or statutory right the defendant allegedly violated was clearly established at the time of the conduct at issue. . . . Only if the plaintiff establishes both elements of the test does the defendant bear the traditional burden of showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law.

*Id.* Courts are permitted to exercise their discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first. *Pearson v. Callahan*, 129 S. Ct. 808, 818 (2009).

Here, as noted above, Plaintiff has failed to set forth facts or evidence showing that Defendant Robinson personally participated in any unconstitutional activity. Accordingly, Defendant Robinson is entitled to qualified immunity against Plaintiff's First and Eighth Amendment claims in his individual capacity.

### *IV. Official Capacity Claims*

Plaintiff has filed suit against Defendant Robinson in his official capacity as the Arapahoe County Sheriff. (Compl. at 1.) In Section 1983 suits, "acts of municipal department officials in their official capacity are equated with the acts of a municipality itself." *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991) (citing *Brandon v. Holt*, 469 U.S. 464, 472 (1985); *Monell v. Dept. of Social Svcs.*, 436 U.S. 658, 690 n. 55 (1978)). Therefore, Plaintiff's First and Eighth Amendment official-capacity claims against Defendant Robinson must be treated as claims against Arapahoe County. *Drake v. Denver*, 953 F. Supp. 1150, 1156 (D. Colo. 1997) (a suit against a governmental entity employee in his "official capacity" is the same as a suit against the entity).

"[T]o establish [Section 1983] municipal liability a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993–94 (10th Cir. 1996) (citing *Canton v. Harris*, 489 U.S. 378, 385 (1989)). "The Supreme Court has held that a municipal policy may include not only policy statements, ordinances, and regulations but the individual decisions of city officials who have 'final policymaking authority.' " *David v. Denver*, 101 F.3d 1344, 1357 (10th Cir. 1996) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 483 (1986) (plurality opinion)). "[A] municipality is liable only when the official policy is the 'moving force' behind the injury alleged." *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (quoting *Board of County Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)). "Under Section 1983, municipalities cannot be held liable for the actions of others under the common law principle of *respondeat superior*; they

are responsible only for their own actions." *Simmons v. Uintah Health Care Special Dist.*, 506 F.3d 1281, 1284 (10th Cir. 2007) (citing *Monell*, 436 U.S. at 691–95; *Pembaur*, 475 U.S. at 478–80).

Plaintiff has failed to allege or set forth facts showing he was served non-Kosher meals or spoiled food in accordance with an official Arapahoe County policy or the decision of a final policymaking official. Plaintiff has failed to dispute that the express policy of the Arapahoe County Sheriff's Office, as stated in its Detention Policy and Procedure Manual, is to "provide each inmate with the opportunity to satisfy the requirements of their religious faith." (Mot., Ex. A-1, Ex. 1 at 2.) Indeed, Plaintiff alleges Defendant's actions actually "violated the rules and regulations of the Arapahoe County Sheriff's Department." (Mot. at 6.)

Furthermore, Plaintiff has failed to show the existence of a municipal custom. A municipal custom is "a widespread practice that . . . is 'so permanent and well settled as to constitute a custom or usage with the force of law.' " *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)) (internal quotations omitted). Plaintiff's repeated allegation that he and other Jewish inmates were "continually" denied Kosher meals is insufficient to create a genuine factual issue because it is conclusory and lacks factual support. *See MacKenzie v. Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005) ("Unsupported conclusory allegations, however, do not create an issue of fact."). Plaintiff cites only one specific incident in which he was allegedly denied a Kosher meal—Plaintiff alleges on September 27, 2006, an employee of Aramark Correctional Services, a prison food service provider, served Plaintiff and other Jewish inmates a non-Kosher, Muslim Halal meal rather than

a Kosher meal. (Compl. at 4.) Similarly, the record contains only one specific incident in which Plaintiff alleges he was served rotten food—Plaintiff's September 5, 2006 grievance states he was served "spoiled, rotten boiled eggs, . . . spoiled rotten fruit, . . . [and] wilted rotten salad."[3] (Mot., Ex. A-10 at 64.) However, these isolated incidents are insufficient to evidence a widespread practice constituting a custom with the force of law for Section 1983 municipal liability purposes.[4]

Plaintiff's failure to demonstrate that a genuine dispute exists on the issue of municipal liability is fatal to his First and Eighth Amendment official capacity claims against Defendant Robinson.

Although the Complaint is properly dismissed on the preceding grounds, Plaintiff's claims also fail to survive on the merits.

---

[3] The court notes the record contains several grievances in which Plaintiff complains of spoiled and/or non-Kosher food. However, nearly all of these lack specific facts showing Plaintiff was actually served spoiled and/or non-Kosher food on any given date and no allegation that he was forced to eat spoiled food.

[4] Plaintiff has attached grievances filed by other inmates in an attempt to set forth evidence of such a custom. However, these statements are not sworn or certified and therefore run afoul of Rule 56(e) and the court need not consider them on summary judgment. Fed. R. Civ. P. 56(e) (in a motion for summary judgment, "[i]f a paper or part of a paper is referred to in an affidavit, a sworn or certified copy must be attached to or served with the affidavit."); *see Hayes v. Marriott*, 70 F.3d 1144, 1148 (10th Cir. 1995) (unsworn statements do not raise factual issues precluding summary judgment); *Gallegos v. Swift & Co.*, 237 F.R.D. 633, 641 (D. Colo. 2006) (courts need not consider evidence that does not conform the requirements of Fed. R. Civ. P. 56(e)).

***V. Eighth Amendment Claims***

Plaintiff alleges the food he was served at ACDF was frequently spoiled and nutritionally inadequate, albeit while only specifically referencing one occasion, as noted above. (Compl. at 4–6.) Pursuant to the Eighth Amendment, the State must provide inmates with "nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it." *Ramos v. Lamm*, 639 F.2d 559, 570–71 (10th Cir. 1980). A substantial deprivation of food may be sufficiently serious to state a conditions of confinement claim pursuant to the Eighth Amendment. *See Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002). "To state a claim for food deprivation, a prisoner must allege both (1) a sufficiently serious deprivation of the minimal civilized measure of life's necessities and (2) deliberate indifference by prison officials to a substantial risk of serious harm to an inmate." *Strope v. Sebelius*, 189 F. App'x 763, 766 (10th Cir. 2006) (unpublished decision) (quotations omitted) (citing *Barney*, 143 F.3d at 1310).

Here, the record contains grievances submitted by Plaintiff dated February 3, 2006 (Mot., Ex. A-10 at 30), July 3, 2006 (*id*. at 40), and September 5, 2006 (*id*. at 64) in which he complains about rotten food. Plaintiff also alleges he was not served peanut butter on July 22, 2006 (*id*. at 48, 50), and was denied coffee on August 8, 2006 (*id*. at 53). However, the February 3, 2006 grievance in which Plaintiff alleges he was served a "rotten salad" states his salad was replaced. (*Id*. at 30.) The record also shows that Plaintiff never notified ACDF deputies concerning the allegedly spoiled food he was served on July 3, 2006 or September 5, 2006. (*Id.* at 64.) Plaintiff has failed to show he was ever served rotten food and was compelled to consume it; i.e. that he

was forced to choose between eating spoiled, rotten food and starvation. Merely being served spoiled food is not, in itself, a serious denial of the minimal civilized measure of life's necessities. *Strope*, 189 F. App'x at 766.

Indeed, the uncontroverted evidence shows that Plaintiff actually experienced a net weight-gain of nine pounds over the course of his incarceration at ACDF. Defendant has provided Plaintiff's medical records, as well as the sworn affidavit of Elaine Meyer, Health Services Administrator at ACDF during Plaintiff's incarceration. (Mot., Ex. A-6.) According to Ms. Meyer and the medical records, Plaintiff weighed 210 pounds upon entry to ACDF on November 30, 2005 (*id*., ¶ 7.a), and 219 pounds on September 15, 2006, thirteen days prior to his release from ACDF (*id*., ¶ 7.h).[5]

The court finds that Plaintiff has failed to set forth sufficient facts or evidence to create a genuine issue of material fact as to whether he suffered a sufficiently serious deprivation of food. Therefore, the court recommends that summary judgment be granted in favor of Defendant Robinson, in his individual and official capacities, on Plaintiff's Eighth Amendment claims.[6]

---

[5] While Plaintiff alleges he lost seventy pounds in response to one of Defendant's interrogatories (Mot., Ex. A-9 at 7), the irrefutable medical documentation conclusively shows Plaintiff gained weight during his incarceration at ACDF.

[6] While Plaintiff's First and Eighth Amendment claims fail as a matter of law, the court notes Plaintiff's request for compensatory and punitive damages are also barred on separate grounds. (Mot. at 15–16.) Section 1997e(e) of the Prison Litigation Reform Act (hereinafter "PLRA") provides in pertinent part: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e) (2008). There has been no showing of physical injury by the Plaintiff. Section 1997e(e) applies regardless of the nature of the underlying substantive violation asserted. *Searles v. Van Bebber*, 251 F.3d 869, 876 (10th Cir. 2001) (applying section 1997e(e) to the plaintiff's First Amendment

### *VI. First Amendment Claim for Denial of Disposable Utensils*

Plaintiff alleges his Jewish faith requires he use disposable utensils when eating and that the denial of such constitutes a violation of his First Amendment rights. (Compl. at 4.) The First Amendment to the United States Constitution provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. "It is well-settled that '[i]nmates . . . retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion.' " *Kay v. Bemis*, 500 F.3d 1214, 1219 (10th Cir. 2007) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987)). However, such protections are not without reasonable limitations. *Id.* "The Supreme Court has cautioned that prison inmates are also subject to the 'necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system.' " *Id.* (quoting *O'Lone,* 482 U.S. at 348). Therefore, "the Court has held that 'a prison regulation imping[ing] on inmates' constitutional rights . . . is valid if it is reasonably related to legitimate penological interests.' " *Id.* (quoting *O'Lone,* 482 U.S. at 349).

---

claim for free exercise of religion).

Plaintiff also seeks punitive damages. (Compl. at 23.) "[P]unitive damages may be recovered for constitutional violations without a showing a compensable injury." *Searles*, 251 F.3d at 880. To obtain punitive damages under Section 1983, Plaintiff must show Defendant's conduct was " 'motivated by evil motive or intent, or . . . involve[d] reckless or callous indifference to [his] federally protected rights.' " *Id.* (quoting *Smith v. Wade*, 461 U.S. 30, 56 (1983)). Here, Plaintiff's failure to show Defendant Robinson personally participated in any unconstitutional activity precludes a showing of evil motive or intent on Robinson's behalf. Accordingly, Plaintiff's request for punitive damages is barred.

"[I]n order to allege a constitutional violation based on a free exercise claim, a prisoner-plaintiff must survive a two-step inquiry." *Id.* "First, the prisoner-plaintiff must . . . show that a prison regulation 'substantially burdened . . . sincerely-held religious beliefs.' " *Id.* (quoting *Boles v. Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007)). "Second, prison officials-defendants may 'identif[y] the legitimate penological interests that justif[ied] the impinging conduct.' " *Id.* (quoting *Boles*, 486 F.3d at 1182). The Supreme Court has defined a "substantial burden" as one that "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd. of Ind. Employment Sec. Div.*, 450 U.S. 707, 718 (1981), or one that forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion . . . on the other hand." *Sherbert v. Verner*, 374 U.S. 398, 404 (1963). The definition of substantial burden does not include "incidental effects of government programs, which may make it more difficult to practice certain religions but which have no tendency to coerce individuals into acting contrary to their religious beliefs." *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 450–51 (1988).

Defendant Robinson does not dispute the sincerity of Plaintiff's religious beliefs or that Plaintiff's desire to use disposable utensils was motivated by those beliefs. (Mot. at 7.) However, Defendant has submitted the sworn Affidavit of Christopher Manos, an ACDF administrative lieutenant during Plaintiff's incarceration who was responsible for administering the food service contract with Aramark. (Mot., Ex. A-3, ¶ 1.) According to Mr. Manos, the ACDF policy concerning eating utensils was as follows:

> Upon entry into ACDF, each inmate is issued a single eating utensil, a spoon. It is the inmate's responsibility to store and keep their utensil. . . . ACDF maintains a supply of new spoons for inmates' use. Any inmate wishing a new spoon may ask a deputy and receive one, including inmates keeping [K]osher.

(*Id.*, ¶ 5.)

Plaintiff has not disputed that this policy was applied to him. The Complaint is devoid of a single allegation that this policy has put substantial pressure on Plaintiff to modify his behavior or violate his beliefs. There is no allegation that requiring Plaintiff to request a new spoon when he felt it necessary to comply with his religious beliefs had any tendency to coerce him into acting contrary to those beliefs, or that the policy substantially burdened Plaintiff's free exercise of his beliefs. According to Mr. Manos's sworn affidavit, "Plaintiff never requested, or was denied, a new or replacement spoon . . . [and] I never received a grievance from Plaintiff regarding a deputy's failure to give [Plaintiff] a new spoon." (*Id.*) Defendant Robinson has also submitted the Affidavit of Joan Marner, a Records Custodian at ACDF responsible for the management of inmate records during the time period relevant to this litigation. (*Id.*, Ex. A-11, ¶ 1–2.) According to Ms. Marner, of the 308 total Inmate Request Forms submitted by Plaintiff throughout both terms of incarceration at ACDF, "[o]nly one kite[7], dated August 5, 2006 (referencing two kites dated July 22, 2006) mentioned disposable utensils." (*Id.*, ¶ 3.) A review of this grievance reveals it conclusorily alleged Aramark was "denying the Jewish inmates disposable utensils, which does not satisfy 'Kashruth,' " without specifying date(s) or individuals involved. (*Id.* at 13.)

---

[7] A "kite" is a written request from a prison inmate.

The only other grievance alluding to eating utensils alleged on February 11, 2006 that Plaintiff's spoon had been taken during a shakedown and when "you ask Deputy Carle for a spoon[,] his response is, ["]I have 'deaf ears.' " (*Id*., Ex. A-10 at 34.) While Plaintiff appears to allege he was denied a spoon on this occasion, "an isolated act of negligence would not violate an inmate's First Amendment right to free exercise of religion." *Gallagher v. Shelton*, 587 F.3d 1063, 1070 (10th Cir. 2009) (citing *Lovelace v. Lee*, 472 F.3d 174, 201 (4th Cir. 2006) ("[Plaintiff] must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983.")). Plaintiff has failed to designate specific facts showing he repeatedly requested and was denied disposable eating utensils by ACDF staff which would comply with his religious dictates.

The court finds a lack of factual allegations and evidence to create a genuine dispute as to whether ACDF's eating utensil policy—one personal spoon per inmate which can be exchanged for a new spoon upon request—imposes a substantial burden on Plaintiff's free exercise of religion. Accordingly, the court recommends summary judgment be granted in favor of Defendant Robinson in his individual and official capacities on Plaintiff's First Amendment claim based on alleged denial of disposable utensils.

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that "Defendant J. Grayson Robinson's Motion for Summary Judgment" (Doc. No. 75) be **GRANTED** and that summary judgment be entered in favor of Defendant Robinson and against Plaintiff on all claims.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579–80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059–60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Refining Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala*

*v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 17th day of February, 2010.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge